UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

**RHONDA COBB,**                                              06 Civ. 13161 (NRB)

                        Plaintiff,

      -against-                                     **COMPLAINT**
                                                     **JURY DEMAND**

**MORNINGSIDE AT HOME, INC. and
ABI MYRNA FENELON,**

                        Defendants.
---------------------------------------------------------------------X

Plaintiff, RHONDA COBB, by her attorneys, the Law Offices of Leonard N. Flamm, as and for her Complaint, respectfully alleges as follows:

## I. JURISDICTION AND VENUE

1. Jurisdiction as to the First and Second Causes of Action herein, arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e *et seq.* ("Title VII"), is conferred upon this Court by Sec. 2000e-5(f) thereof; declaratory relief is authorized by 28 U.S.C. Secs. 2201 and 2202. Jurisdiction as to the Third through Fifth Causes of Action herein, arising under Section 297.9 of the New York State Human Rights Law ("NYSHRL"), and as to the Sixth through Eighth Causes of Action herein, arising under Secs. 8-107.1(a) and 8-502 of the New York City Human Rights Law ("NYCHRL"), is conferred upon this Court by and under the principles of supplemental jurisdiction, as set forth in 28 U.S.C. §1367.

2. Venue lies in the Southern District of New York under 28 U.S.C. 1391(c) in that Defendant Morningside maintains its principal offices in said vicinage.

## II. PARTIES

3. Plaintiff, Rhonda Cobb, ("Plaintiff"), is a female who resides in Bronx County, New York.

4. Defendant, Morningside at Home, Inc. ("Morningside" or "Defendant"), is, upon information and belief, a domestic corporation authorized to do business as a nursing and assisted living facility in New York State, with offices located at 1500 Pelham Parkway Bronx, New York, 10461.

5. Defendant Morningside is an "employer" within the meaning of Title VII.

6. Defendant Morningside is an "employer" within the meaning of Sec. 292.5 of the NYSHRL.

7. Defendant Morningside is a "covered entity" within the meaning of Sec. 8-102(17) of the NYCHRL and an "employer" within the meaning of Sec. 8-102(5) of the NYCHRL.

8. The individual Defendant, Abi Myrna Fenelon (hereinafter "Fenelon"), a female, was, at all times pertinent hereto, Defendant's Director of Assisted Living Program and Plaintiff's Supervisor. She works at Defendant's premises as set forth above.

## III. ADMINISTRATIVE PROCEDURES

9. On or about July 6, 2006, and within the time prescribed by Title VII, Plaintiff duly filed, with the Equal Employment Opportunity Commission ("EEOC") a charge of sex-based discrimination and retaliation against Defendant Morningside.

10. On or about November 7, 2006, a Notice of Right to Sue letter was issued to Plaintiff by the EEOC (Exh. "A" hereto).  This suit has been timely commenced within ninety (90) days from the date of receipt of the said Notice.

## IV.    STATEMENT OF CLAIM

11. On or about June 20, 2005, Plaintiff began working at Defendant Morningside as a Compliance Coordinator.  At all times herein pertinent, Plaintiff's job performance has been satisfactory.

12. Commencing in or around September 2005, and continuing for several months thereafter, Defendant Fenelon, without provocation or justification, subjected Plaintiff to a pervasive sexually hostile and offensive work environment.

13. Defendant Fenelon's actions and statements were crude, offensive and humiliating to Plaintiff and were all unwelcome by her.  Defendant Fenelon's sexually offensive actions and statements included, inter alia, the following:

    a. In or around early September 2005, a conversation took place between Defendant Fenelon, Plaintiff and Ivette Pagan (hereinafter "Ms. Pagan"), Defendant Morningside's Payroll Coordinator.  When the name of Victor Pagan (no relation to Ms. Pagan), Defendant Morningside's Nursing Supervisor, was mentioned during said conversation, Defendant Fenelon stated, in Plaintiff's presence, "He takes it in the ass.  All he can do for me is to let me sit on his face."

b. From September through November 2005, Defendant Fenelon would regularly make gyrating motions with her buttocks, simulating sexual intercourse, at the mere mention of Brian Kelly's (hereinafter "Kelly") name, Defendant Morningside's Purchasing Systems Coordinator.

c. In or around late September 2005/early October 2005, while standing in an office space in which four (4) employees' work stations were situated, including Plaintiff's work station, Defendant Fenelon, in the presence of Plaintiff, asked Gay Wheeler-Smith (hereinafter "Wheeler-Smith"), Defendant Morningside's Director of Patient Services: "What is this?" Defendant Fenelon then pantomimed the act of fellatio. Wheeler-Smith responded: "If you are doing what I think you are doing, you are doing it wrong because it is not supposed to be hitting the sides of your mouth." Both Defendant Fenelon and Wheeler-Smith then proceeded to laugh.

d. In or around October 2005, Plaintiff retrieved files from the bottom drawer of a filing cabinet. As Plaintiff bent over to reach said files, Defendant Fenelon walked by and slapped Plaintiff's buttocks with her hand.

e. On or about October 28, 2005, Defendant Fenelon sent Plaintiff an e-mail wherein Defendant Fenelon wrote: "[Plaintiff], why are you so big? Lisette [Rivera] (Defendant Morningside's Business Coordinator) why is your ass…so flat? We need these answers. It is costing too much money for you to sit on the chairs."

f. In or around mid to late Fall 2005, David Figueroa (hereinafter "Figueroa"), Defendant Morningside's Office Manager/Administrative Coordinator, was standing in front of a co-worker's desk while he helped said co-worker with a work-related matter. In Plaintiff's presence, Defendant Fenelon, seated behind Figueroa, stated, "Look at all this. (referring to Figueroa's buttocks). All of this is mine." While she spoke, Defendant Fenelon was also moving her hands in a circular motion near and with reference to Figueroa's buttocks.

g. On or about November 16, 2005, Defendant Fenelon forwarded to Plaintiff an e-mail, that Defendant Fenelon had initially sent to Figueroa, wherein Defendant Fenelon wrote to Figueroa (written in part Spanish (loosely translated), in part English): "Please my big love, I want your body now. I need a lot of loving now. Meet me in the parking lot now!"

h. On or about November 27, 2005, Defendant Fenelon introduced Plaintiff to Juanita "Doe", Defendant Fenelon's personal friend. Defendant Fenelon showed Plaintiff's picture of her grandson to Juanita and stated that Plaintiff's daughter had given birth to him at the age of fourteen. Plaintiff then informed Defendant Fenelon and Juanita that her daughter was twenty-one years old, not fourteen when she gave birth to her son. Juanita then told Plaintiff that this surprised her because Plaintiff looked like she was still in her twenties. Defendant Fenelon thereupon replied: "You know why she looks so good?" She then proceeded to pantomime the act of fellatio. Juanita stated: "Well, whatever [Plaintiff] is doing, it

5

  keeps her looking really young." Fenelon then replied: "You know what keeps her looking young? She swallows."

  i. In or around early January 2006, Defendant Fenelon, in Plaintiff's presence, instructed Reinette Flores (hereinafter "Flores"), Defendant Morningside's Program Manager and Plaintiff's Direct Supervisor, to never again wear a certain pair of pants which Flores had worn to work that day. Defendant Fenelon further stated to Flores that her pants "look nasty, they are all in your pussy and it looks disgusting." Plaintiff witnessed said incident as she was seated approximately six (6) feet away from both Flores and Defendant Fenelon at the time.

14. Although some of the foregoing incidents and remarks may be viewed by Defendant Fenelon or Defendant Morningside as ribald humor, Plaintiff does not share this view. The incidents and remarks, from her perspective, as discussed <u>supra</u>, were highly offensive, humiliating and, in fact, painful to her as they evoked a prior outrageous sexual experience in her own life.

15. Prior to working at Defendant Morningside, Plaintiff had been the victim of coerced sexual activity, which has sensitized her and which triggers extreme anxiety and depression today when grossly sexual-based statements and actions, as here, are directed at her or made in her presence.

16. Defendant Morningside's actions in exposing Plaintiff to such statements and actions, through Defendant Fenelon, have repeatedly opened and deepened the emotional scars held by Plaintiff as to that prior outrageous coerced sexual activity.

17. Shortly after the November 27, 2005 incident, Plaintiff lodged a complaint regarding said incident, inter alia, to Flores. She indicated to Flores that she found Defendant Fenelon's behavior toward her to be deeply offensive. Flores provided no response.

18. In or around early December 2005, Defendant Morningside transferred Theresa Smith (hereinafter "Smith"), Defendant's Human Resources Coordinator, to Plaintiff's job site. Prior to this placement, there had been no Human Resources personnel at Plaintiff's job site.

19. Shortly thereafter, Plaintiff lodged a complaint with Smith regarding, inter alia, the November 27, 2005 incident. Plaintiff asked Smith what further steps Smith would take or that Plaintiff should take regarding this matter, but Smith did not respond.

20. Frustrated by the failure of both Flores and Smith to respond to her complaints, Plaintiff filed a written complaint, on or about January 25, 2006, with Morningside House Human Resources (Defendant Morningside's parent company).

21. On or about February 13, 2006, Defendant Fenelon submitted a brief letter of apology to Plaintiff for her inappropriate actions. This letter, however, was not even palliative as it did not begin to address, let alone assuage, the pain and suffering experienced by Plaintiff because of the prior statements and actions of Defendant Fenelon. Moreover, the letter was "cold comfort" because it failed to assure Plaintiff that there would be no further hostile incidents or any retaliatory

repercussions. Upon information and belief, Fenelon was not disciplined in any way.

22. To the contrary, by its lack of a contrite response to Plaintiff's various complaints regarding Defendant Fenelon's actions, Defendant Morningside all but condoned, if not fostered or encouraged, the continuation, by others, of the sexually hostile work environment created by Defendant Fenelon.

23. In addition to allowing an uncorrected sexually hostile work environment to exist without a prospect of an end, Defendant Morningside proceeded to take retaliatory actions against Plaintiff after she lodged her January 25, 2006 complaint. Within one month after Plaintiff lodged her first written complaint, she received both a "Verbal Warning" (memorialized in a memorandum) and a "First Written Warning." Prior to this, Plaintiff had never been written-up. None of the issues mentioned therein had ever before been brought to Plaintiff's attention. Plaintiff refused to sign either Warning.

24. On or about March 22, 2006, Wheeler called Plaintiff into a meeting with Dorothea Ferguson-Bell, Defendant Morningside's Vice President of Human Resources, wherein Defendant Morningside informed Plaintiff that she was being summarily terminated for the stated reason of her failing to maintain employee personnel files.

25. This stated reason was both false and pretextual. Defendant Morningside, in fact, terminated Plaintiff in retaliation for lodging her January 25, 2006 complaint.

26. Prior to Plaintiff's termination, the sexually hostile work environment at Defendant Morningside had regularly caused Plaintiff to experience severe anxiety and various stress-related physical symptoms.  As such, she was forced to undertake therapy and is continuing to be regularly treated by a psychotherapist.  As of this date, Plaintiff is also taking medications to treat her depression and her anxiety.

27. Defendant Morningside's termination of Plaintiff has aggravated her mental distress and suffering.

28. As a result of the wrongful and abusive actions of Defendants, as described herein, Plaintiff has lost substantial earnings and has suffered severe mental anguish and distress all caused by Defendants' actions as aforesaid.

### V.   FIRST CAUSE OF ACTION AGAINST DEFENDANT MORNINGSIDE

29. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 11 through 28 inclusive, as though set forth fully herein.

30. The actions of Defendant Morningside, through Defendant Fenelon, in creating and condoning a sex-based hostile work environment and in failing to take steps to stop the sexually offensive conduct herein described, were willful and based upon discriminatory reasons, all in violation of rights secured to Plaintiff by Title VII.

## VI. SECOND CAUSE OF ACTION AGAINST DEFENDANT MORNINGSIDE

31. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 11 through 28 inclusive, as though set forth fully herein.

32. The actions of Defendant Morningside as described in Paragraphs 20 through 25 herein, were willful and based upon retaliatory reasons, all in violation of rights secured to Plaintiff by Title VII.

## VII. THIRD CAUSE OF ACTION AGAINST DEFENDANT MORNINGSIDE

33. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 11 through 28 inclusive, as though set forth fully herein.

34. The actions of Defendant Morningside, through Defendant Fenelon, in creating and condoning a sex-based hostile work environment and in failing to take steps to stop the sexually offensive conduct herein described, were willful and based upon discriminatory reasons, all in violation of rights secured to Plaintiff by Section 296.1(a) of the NYSHRL.

## VIII. FOURTH CAUSE OF ACTION AGAINST DEFENDANT MORNINGSIDE

35. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 11 through 28 inclusive, as though set forth fully herein.

36. The actions of Defendant Morningside as described in Paragraphs 20 through 25 herein, were willful and based upon retaliatory reasons, all in violation of rights secured to Plaintiff by Section 296.1(e) of the NYSHRL.

### IX. FIFTH CAUSE OF ACTION
### AGAINST DEFENDANT FENELON

37. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 11 through 28 inclusive, as though set forth fully herein.

38. The actions of Defendant Fenelon, as described in Paragraphs 11 through 28 herein, created a sex-based hostile work environment and were willful, all in violation of rights secured to Plaintiff by Section 296.6 of the NYSHRL.

### X. SIXTH CAUSE OF ACTION
### AGAINST DEFENDANT MORNINGSIDE

39. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 11 through 28 inclusive, as though set forth fully herein.

40. The actions of Defendant Morningside, through Defendant Fenelon, in creating and condoning a sex-based hostile work environment and in failing to take steps to stop the sexually offensive conduct herein described, were willful and based upon discriminatory reasons, all in violation of rights secured to Plaintiff by Sections 8-107.1(a) and 8-107.13 of the NYCHRL.

### XI. SEVENTH CAUSE OF ACTION
### AGAINST DEFENDANT MORNINGSIDE

41. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 11 through 28 inclusive, as though set forth fully herein.

42. The actions of Defendant, as described in Paragraphs 20 through 25 herein, were willful and based upon retaliatory reasons, all in violation of rights secured to Plaintiff by Section of 8-107.7 the NYCHRL.

## XII. EIGHTH CAUSE OF ACTION
## AGAINST DEFENDANT FENELON

43. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 11 through 28 inclusive, as though set forth fully herein.

44. The actions of Defendant Fenelon, as described in Paragraphs 11 through 28 herein, created a sex-based hostile work environment and were willful, all in violation of rights secured to Plaintiff by Section 8-107.6 of the NYCHRL.

## XIII. PRAYER

**WHEREFORE**, Plaintiff asks for judgment on her First through Sixth Causes of Action, seeks relief and respectfully prays that this Court grant or award the following:

   a. A money judgment award in favor of Plaintiff and against Defendants, in an amount to be determined at trial: (i) for all out-of-pocket losses which Plaintiff has incurred as a result of being discriminated against, including back pay, lost wages, lost fringe benefits and such other out-of-pocket expenses incurred and computed with interest from March 22, 2006, her last day of work, to the date of trial; and (ii) for all other sums to which Plaintiff shall hereafter be entitled to, from and after the date of trial, with respect to all of her claims for forward pay and lost fringe benefits;

   b. A money judgment, in an amount to be determined at trial, for the mental distress anguish, pain and suffering experienced by Plaintiff as a result of Defendants' wrongful employment practices and activities, as provided for by Title VII and Sec. 8-120.a(8) of the NYCHRL;

    c. A money judgment award with respect to Plaintiff's losses, under Title VII and Secs. 8-120(a)(8) and 8-502(a) of the NYCHRL, as punitive damages, to the extent Defendants' violations are found to have been willful and/or in reckless disregard of the rights of Plaintiff;

    d. An allowance for Plaintiff's costs and disbursements incurred in the prosecution of this action, including her reasonable attorneys' fees, and interest, as provided by Title VII and Sec. 8-502(f) of the NYCHRL; and

    e. Such other and further monetary relief as to the Court may seem just and proper in the circumstances.

Dated: New York, New York
         November 10, 2006

Respectfully Submitted,

**THE LAW OFFICES OF LEONARD N. FLAMM**
Attorneys for Plaintiff
880 Third Avenue, Suite 1300
New York, New York 10022
(212) 752-3380

By:_____
    Leonard N. Flamm (LF-9523)

## JURY DEMAND

**PLEASE TAKE NOTICE** that Plaintiff hereby demands trial by jury as to all issues so triable in this action.

By:_____
    Leonard N. Flamm (LF-9523)